# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTON THURMAN MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV13 |
| | ) | |
| NOLAN TERRANCE JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on "Defendants Nolan Terrance Johnson, H.M. Bryant, J.A. Henry, J.F. Sullivan, P.M. Felske, Sgt. D.T. Lentz, C.R. Helf, and Chris Ingram's Motion for Judgment on the Pleadings Pursuant to Rule 12(c)" (Docket Entry 58 (the "Motion")). For the reasons that follow, the Court should deny the Motion.

## BACKGROUND

Anton Thurman McAllister (the "Plaintiff"), acting pro se, initiated this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Winston-Salem Police Department; Forsyth County, North Carolina; the City of Winston-Salem, North Carolina; and twenty-two law-enforcement officers, alleging that "the officers engaged in a wide-ranging conspiracy with Tia Leonard, [Plaintiff's] then[-]girlfriend's mother, to have him arrested, charged, and prosecuted for the forcible rape, sexual assault, and felony strangulation of her daughter" (Docket Entry 4 at 1). (See Docket Entry 2 (the

"Original Complaint") at 1–3, 5–8, 32.) Upon screening pursuant to 28 U.S.C. § 1915A(a), the undersigned United States Magistrate Judge recommended that the Court allow only certain claims to proceed, based on Plaintiff's failure to state a claim as to some of the officers. (See Docket Entry 4 at 1–2, 14.) The Court (per Chief United States District Judge Thomas D. Schroeder) adopted that recommendation (over Plaintiff's objection (see Docket Entry 6)), such that only "Plaintiff's claims against Defendants Nolan Johnson, H.M. Bryant, J.A. Henry, J.F. Sullivan, P.M. Felske, Sgt. D.T. Lentz, C.R. Helf, and Chris Ingram [(collectively, 'Defendants')]" (Docket Entry 7 at 1) survived initial screening.

Shortly thereafter, Plaintiff moved to amend the Original Complaint (see Docket Entry 10; see also Docket Entry 10-3 (proposed amended complaint)), which motion the Court (per the undersigned) granted (see Docket Entry 16 at 2 (explaining Plaintiff's entitlement to amendment as matter of course), 6 (directing Clerk to docket proposed amended complaint); Docket Entry 18 (the "Operative Complaint")). Pursuant to 28 U.S.C. § 1915A(a), the undersigned screened the Operative Complaint, noting that "[it] present[ed] the same basic claims against Defendants [as alleged in the Original Complaint,] which the Court previously allowed to proceed, but also [sought] to revive the dismissed claims . . . [and] to add claims against [a new defendant]." (Docket Entry 16 at 2–3.) The undersigned

2

recommended that the Court reject that effort, dismissing the revived and novel claims for failure to state a claim. (See id. at 6.) The Court (per United States District Judge Catherine C. Eagles) likewise adopted that recommendation (again over Plaintiff's objection (see Docket Entry 26)). (See Docket Entry 28.)

According to the Operative Complaint:

On February 16, 2015, Defendant Henry approached Plaintiff and questioned him about a matter involving a moped while concealing the true purpose of the questioning (i.e., "serious allegations against [Plaintiff]" (Docket Entry 18 at 14)). (See id. at 11, 14.) After Plaintiff "refused to go with [Defendant Henry] without probable cause" (id.), Defendant Henry conspired with Defendant Bryant to transport Plaintiff to the police station (see id. at 14–15), where Defendant Johnson and Defendant Sullivan elicited a confession from Plaintiff (see id. at 16–18). During the exchange that led to that confession, neither Defendant Johnson nor Defendant Sullivan provided Plaintiff with Miranda warnings. (See id. at 16, 18.) Defendant Henry similarly deprived Plaintiff of such information and denied him assistance by counsel. (See id. at 14.) Defendant Bryant failed to remedy that misconduct by Defendant Henry. (See id. at 14–15.) In connection with his effort to obtain a confession from Plaintiff, Defendant Sullivan also misinformed Plaintiff about the nature of the charges he

3

faced.  (_See_ _id._ at 17-18 (explaining that Defendant Sullivan denied rape accusation against Plaintiff).)

Plaintiff's confession led to his wrongful arrest and detention on (unspecified) excessive bail.  (_See_ _id._ at 13-15.) During the 18 months that elapsed before Plaintiff went to trial on charges of rape, sexual assault, kidnapping, and strangulation, Defendants engaged in other wrongdoing.  (_See_ _id._)  In particular, Defendant Johnson (i) falsified a police report, (ii) allowed Plaintiff's accuser to continue purchasing and using heroin, (iii) mishandled evidence at the crime scene, and (iv) wrongfully deleted pictures and information from Plaintiff's Facebook account (including potentially exculpatory evidence).  (_See_ _id._ at 16-17.) Additionally, Defendant Felske improperly coached Plaintiff's accuser and allowed her to tamper with the crime scene.  (_See_ _id._ at 18-19.)  Defendant Helf accompanied Defendant Felske to meet with Plaintiff's accuser and likewise failed to preserve evidence. (_See_ _id._ at 20.)  Defendant Lentz, as a supervisor, "aid[ed] and abett[ed] [Defendant] Felske and [Defendant] Helf" in the foregoing misconduct.  (_See_ _id._ at 21.)  Finally, Defendant Ingram disregarded exculpatory evidence at the crime scene and fabricated investigative reports.  (_See_ _id._ at 24.)

As a result, Plaintiff received an unfair trial that resulted in his conviction of assault on a female (but acquittal of all other charges) (_see_ _id._ at 13), for which conviction he served 30

4

months (as a detainee, prisoner, and parolee) (<u>see</u> <u>id.</u> at 26–28). Plaintiff has attributed pain and suffering, as well as a diagnosis of post-traumatic stress disorder, to his wrongful arrest, prosecution, and conviction. (<u>See</u> <u>id.</u> at 17.) Based on those allegations, Plaintiff has asserted that Defendants violated the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendments. (<u>See</u> <u>id.</u> at 7.)

Defendants answered the Operative Complaint, denying allegations of wrongdoing and invoking various affirmative defenses. (<u>See</u> Docket Entries 39, 45, 49.) The parties thereafter engaged in discovery. (<u>See</u> Text Order dated Feb. 18, 2020 (adopting Scheduling Order).) A few weeks later, Defendants moved to stay proceedings in this case on the grounds that the criminal prosecution of Plaintiff in North Carolina state court (which formed the basis for the allegations in the Operative Complaint) remained pending. (<u>See</u> Docket Entry 47 (the "First Motion to Stay"); <u>see also</u> Docket Entries 48 (supporting memorandum), 48-1 (the "State Court Order") (denying suppression motion in Plaintiff's criminal case).)

According to the First Motion to Stay, the Operative Complaint relates to an investigation that began on February 16, 2015, and led to the arrest of Plaintiff on the following day. (<u>See</u> Docket Entry 48 at 1 & n.1 (citing State Court Order and search result from government website).) At some point thereafter, "Plaintiff

5

was indicted for 'habitual misdemeanor assault and charges of second-degree rape, second degree sex offense, and assault by strangulation.'" (Id. at 1–2 (quoting State v. McAllister, 265 N.C. App. 309, 311, 827 S.E.2d 538, 540 (2019)).) After an unsuccessful attempt to suppress the statements he made to officers the night of his arrest (see id. at 2 (referencing State Court Order)), Plaintiff proceeded to trial, at which a jury acquitted him of all but "assault on a female, the underlying felony for habitual misdemeanor assault [(the 'Assault Charges')]" (id. (quoting McAllister, 265 N.C. App. at 311, 827 S.E.2d at 540)).

Although Plaintiff tendered no notice of appeal, "[he] filed a *pro se* 'Motion to Modify and Terminate Sentence for Ineffective Assistance of Counsel[,]' [which t]he trial court treated . . . as a motion for appropriate relief . . . and denied . . . without an evidentiary hearing." McAllister, 265 N.C. App. at 311, 827 S.E.2d at 540. Plaintiff then filed a petition for writ of certiorari with the North Carolina Court of Appeals, which "allowed [the] petition . . . for the purpose of reviewing the verdict and judgment entered in the trial court in Plaintiff's criminal case." (Docket Entry 48 at 2.) A divided panel of the North Carolina Court of Appeals "found no error in the jury's verdict or the judgment entered in the trial court" (id.). See McAllister, 265 N.C. App. at 317, 319, 827 S.E.2d at 544, 545 (ruling that conduct by Plaintiff's criminal defense attorney "was not *per se* deficient

6

under [State v. Harbison, 315 N.C. 175, 337 S.E.2d 504 (1985)] to award a new trial," such that "[t]here [wa]s no error in the jury's verdict or in the judgment entered thereon"). However, one dissenting judge concluded "that there had been a violation of Plaintiff's right to effective assistance of counsel, and that Plaintiff was entitled to a new trial" (Docket Entry 48 at 2). "Plaintiff appealed to the North Carolina Supreme Court" (id.), where, as of March 2020, the matter remained pending.

The Court (per the undersigned) granted the First Motion to Stay. (See Text Order dated May 4, 2020 (noting lack of timely opposition by Plaintiff).) Several months later, Defendants filed a notice indicating that, on September 25, 2020, the North Carolina Supreme Court had issued a decision regarding Plaintiff's criminal case. (See Docket Entry 50 (the "Notice"); see also Docket Entry 50-1 (copy of decision).) The North Carolina Supreme Court reversed the finding of no error by the North Carolina Court of Appeals, remanding the case to Forsyth County Superior Court, State v. McAllister, 375 N.C. 455, 456, 847 S.E.2d 711, 712 (2020), with instructions to address the issues underlying potential ineffective assistance of counsel by Plaintiff's criminal defense attorney at trial (i.e., to "determin[e] whether [Plaintiff] knowingly consented in advance to his attorney's admission of guilt to the assault on a female charge," id. at 477, 847 S.E.2d at 725. See id. (directing Forsyth County Superior Court to hold an evidentiary

hearing, make findings of fact and conclusions of law, enter an order, and "then certify the order, the findings of fact and conclusions of law, and the transcript of the hearing to th[e North Carolina Supreme Court]").

The day after filing the Notice, Defendants again moved to stay proceedings in this case. (See Docket Entry 51 (the "Second Motion to Stay"); see also Docket Entry 52 (supporting memorandum).) Because the North Carolina Supreme Court had remanded Plaintiff's criminal case with instructions (as described above), Defendants asserted that "the state criminal proceedings are ongoing and may not reach a final resolution for some time." (Docket Entry 52 at 3.) The Court (per the undersigned) granted the Second Motion to Stay. (See Text Order dated Nov. 6, 2020 (noting lack of timely opposition by Plaintiff).) Defendants thereafter filed a pair of status reports, indicating that Plaintiff's criminal case remained pending, with no trial date set. (See Docket Entries 54, 55.)

In November 2021, Defendants filed another status report, advising that Plaintiff had pleaded "guilty to involuntary manslaughter in Case No. 20 CRS 57597 [(the "2020 Case")]. . . in a plea deal to resolve outstanding criminal charges" (Docket Entry 57 at 1). More specifically, according to Defendants, "the [Forsyth County] District Attorney's Office report[ed] that Plaintiff [had] agreed to plead guilty to involuntary manslaughter

8

in [the 2020 Case] 'in exchange for a dismissal' of the [Assault C]harges" (id.). Defendants attached as an exhibit a copy of the public record documenting the dismissal of the Assault Charges in a manner consistent with the report from the Forsyth County District Attorney's Office. (See Docket Entry 57-1 (the "Dismissal Form") at 2 (bearing signature of prosecutor "EF DRESEL" as well as "filed" stamp of Forsyth County Clerk of Superior Court).) "The [Dismissal Form] also notes that [] Plaintiff had 'served all available time on [the Assault Charges] and can get no more punishment even if [the] case was retried; further prosecution not in the public interest.'" (Docket Entry 57 at 2 (quoting Docket Entry 57-1 at 2).)

The Court (per the undersigned) lifted the stay and reset several discovery deadlines. (See Text Order dated Nov. 8, 2021.) Shortly thereafter, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), arguing that "Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny." (Docket Entry 58 at 1; see also Docket Entries 59 (supporting memorandum), 59-1 (copy of Dismissal Form).) Plaintiff opposed the Motion (see Docket Entry 61 (the "Response")) and submitted a supplement (see Docket Entry 62). Defendants replied (see Docket Entry 63 (the "Reply")) and, on two occasions, filed a suggestion of subsequently decided authority (see Docket Entries 67 (citing Thompson v. Clarke, ___

9

U.S. ___, 142 S. Ct. 1332 (2022)), 68 (citing <u>Daulatzai v.</u> <u>Maryland</u>, ___ F. Supp. 3d ___, Civil No. 21-590, 2022 WL 2078284 (D. Md. June 9, 2022) (unpublished), <u>appeal filed</u>, No. 22-1816 (4th Cir. 2022)).

## DISCUSSION

### I. Relevant Legal Standards

### A. Judgment on the Pleadings

"[A] party may move for judgment on the pleadings" pursuant to Rule 12(c) any time "[a]fter the pleadings are closed," as long as it moves "early enough not to delay trial," Fed. R. Civ. P. 12(c). Federal Rule of Civil Procedure 7 defines "pleadings" to include, in pertinent part, "a complaint" and "an answer to a complaint," Fed. R. Civ. P. 7(a)(1), (2). Under Rule 12(c), the Court (i) takes all factual allegations in the complaint as true, <u>see</u> <u>Alexander v. City of Greensboro</u>, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011), (ii) takes all factual allegations in the answer "as true only where and to the extent they have not been denied or do not conflict with the complaint," <u>id.</u> (internal quotation marks omitted), and (iii) "draws all reasonable factual inferences in [] favor [of] the nonmoving part[y]," <u>id.</u> "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." <u>Smith v. McDonald</u>, 562 F. Supp. 829,

10

842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985). Accordingly, "a Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (brackets and internal quotation marks omitted); see also id. at 347 ("Rule 12(c) motions are governed by the same standard as motions brought under [Federal] Rule [of Civil Procedure] 12(b)(6)." (internal quotation marks omitted)).

In connection with the foregoing inquiry, the "[C]ourt cannot consider matters outside the pleadings without converting the motion into one for summary judgment." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). However, the Court may "consider a 'written instrument' attached as an exhibit to a pleading," id. (quoting Fed. R. Civ. P. 10(c)), "as well as [documents] attached to the motion to dismiss [or motion for judgment on the pleadings], so long as they are integral to the complaint and authentic," id. (first set of brackets in original) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Beyond those caveats, if "matters outside the pleadings are presented to and not excluded by the [C]ourt, the [Rule 12(c)] motion must be treated as one for summary judgment under [Federal] Rule [of Civil Procedure] 56." Fed. R. Civ. P. 12(d). In that circumstance, "[a]ll parties must be given a reasonable opportunity to present all the material

Case 1:19-cv-00013-CCE-LPA   Document 69   Filed 08/15/22   Page 11 of 30

that is pertinent to the motion." Id. "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the [C]ourt . . . that it is treating the [relevant] motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (ellipsis in original) (internal quotation marks omitted).

## B. Section 1983

"To state a claim under [Section] 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009). Cognizable claims under Section 1983 include, inter alia, claims of unreasonable seizure pursuant to legal process, see Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000), which claims courts sometimes have denominated as a Section 1983 claim for "malicious prosecution," see, e.g., Thompson, __ U.S. at __, 142 S. Ct. at 1337. Such claim obligates a plaintiff to "demonstrate, among other things, that he obtained a *favorable termination* of the underlying criminal prosecution," id. at __, 142 S. Ct. at 1335.

In Heck, the United States Supreme Court considered "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." Heck,

12

512 U.S. at 478. After identifying the common-law tort of malicious prosecution as the closest analog to a Section 1983 claim attacking a conviction or sentence, the <u>Heck</u> Court acknowledged that such claim could raise "concerns for finality and consistency," <u>id.</u> at 485, and conflict with the Court's general hesitance to "expand opportunities for collateral attack," <u>id.</u> Accordingly, the <u>Heck</u> Court held that "a [Section] 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." <u>Id.</u> at 489–90. That accrual rule bars a Section 1983 plaintiff from improperly using a civil tort action as a vehicle to challenge the validity of an outstanding criminal judgment. <u>See</u> <u>id.</u> at 486; <u>see also</u> <u>id.</u> at 489 (noting that invalidation-dependent accrual rule avoids statute-of-limitations problem during pendency of state challenge to conviction or sentence).

Accordingly, although the <u>Heck</u> Court observed that the favorable-termination element of a common-law malicious-prosecution claim similarly discourages parallel litigation and improper collateral attacks, <u>see</u> <u>id.</u> at 484, "*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim," <u>Roberts v. City of Fairbanks</u>, 947 F.3d 1191, 1201 (9th Cir. 2020). In that regard,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other

13

harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [Section] 1983.

Heck, 512 U.S. at 487 (internal footnote and citation omitted).[1]

Importantly, the Heck bar operates only when "a judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's outstanding] conviction or sentence." Id.[2] Conversely, "if the district court determines that the plaintiff's

---

1 Even though courts, including the United States Court of Appeals for the Fourth Circuit, have described Heck as imposing a "favorable termination" requirement, see Wilson v. Johnson, 535 F.3d 262, 263 (4th Cir. 2008), that shorthand term merely represents the four above-described means by which a Section 1983 plaintiff may demonstrate the invalidity of a challenged conviction or sentence, see id. In other words, despite the shared terminology, "the Heck doctrine does not require that the [Section] 1983 plaintiff demonstrate favorable termination [as defined in the context of a malicious-prosecution claim]." Martin A. Schwartz, Section 1983 Litigation Claims and Defenses § 10.06 (4th ed. 2022) ("Courts should not conflate the Heck doctrine with the malicious prosecution favorable termination requirement.").

2 The Fourth Circuit further has explained that the Heck bar only applies to "a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody." Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 197 (4th Cir. 2015). The parties have not addressed the applicability of Heck in light of Plaintiff's release from custody (see Docket Entry 56-1 at 1(reflecting residential address)). (See Docket Entries 59, 61, 62, 63.) In any event, for the reasons explained above, the Court should reject the argument that Heck dooms Plaintiff's claims at this stage.

14

action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (internal footnote omitted).[3]

## II. Analysis

As a preliminary matter, Defendants have asked the Court to take judicial notice of the State Court Order, opinions of the North Carolina Court of Appeals and North Carolina Supreme Court, and the Dismissal Form (attached to the Motion), without converting the Motion into one for summary judgment. (See Docket Entry 59 at 3 n.2, 5 n.3.) Without explicitly expressing his view on the propriety of the Court considering such documents at this stage, Plaintiff submitted with the Response a duplicate copy of the Dismissal Form. (Compare Docket Entry 61-1 at 5, with Docket Entry 59-1 at 2.) However, Plaintiff appears to challenge the notion that the Dismissal Form establishes a connection between the Assault Charges and his guilty plea to involuntary manslaughter in

---

3 By way of "example," the Heck Court explained that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the [Section] 1983 plaintiff's still-outstanding conviction." Id. at 487 n.7; see also id. ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a [Section] 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." (internal citations omitted)); Covey, 777 F.3d at 197 ("As *Heck* itself recognizes, civil claims based on unreasonable searches do not *necessarily* imply that the resulting criminal convictions were unlawful.").

15

the 2020 Case, insisting that such plea originated instead from charges associated with two other criminal case numbers (conspiracy and destruction of body/remains concealment of unnatural death in case numbers 18 CR 50163 and 18 CR 50306, respectively (the "2018 Cases")). (See Docket Entry 61 at 2–3; see also id. at 8 (maintaining that "[Assault Charges] had nothing to do with the [2018 C]ase[s]").) Plaintiff attached to the Response (i) two pages from an unsigned document that references both the 2018 Cases and the 2020 Case (see Docket Entry 61-1 at 1–2) and (ii) a copy of an email (bearing a subject line containing only Plaintiff's surname) from a Forsyth County assistant district attorney to a person identified as Dan Anthony (see id. at 3 (conveying plea offer on October 1, 2021)).

The Court should take judicial notice of official public records from the North Carolina state court system (including the Dismissal Form) and judicial opinions relating to Plaintiff's criminal case without treating the Motion as one for summary judgment. See Witthohn v. Federal Ins. Co., 164 F. App'x 395, 396–97 (4th Cir. 2006). However, the documents attached to the Response lack comparable indicia of reliability (see, e.g., Docket Entry 61-1 at 1–3 (reflecting handwritten notes of unknown origin)) and fail to qualify as pleadings because the Operative Complaint (docketed in September 2019 (see Docket Entry 18)) does not (indeed, could not) reference the circumstances of a plea

16

negotiation that apparently occurred sometime around October 2021 (see Docket Entry 59-1 at 2 (Dismissal Form reflecting signature by prosecutor on October 18, 2021)). Because Plaintiff has raised matters outside the pleadings by attaching materials to the Response, the Court should decline to consider those documents for purposes of the Motion.

Turning to the merits of the Motion, Defendants have contended that Heck bars all of Plaintiff's claims in this action because "[he] did not obtain a favorable termination as to the underlying criminal proceedings" (Docket Entry 59 at 6 (standard capitalization applied)). In that regard, Defendants have noted that Plaintiff "resolved . . . the criminal proceedings and charges . . . that relate to this lawsuit . . . pursuant to a compromise agreement." (Id. at 7 (referencing guilty plea to involuntary manslaughter in exchange for dismissal of Assault Charges, as reflected on Dismissal Form).) Per Defendants, "Plaintiff's compromise resolution of the relevant criminal proceedings against him did not in any way indicate or suggest that Plaintiff was innocent of the charges. In fact, the compromise resolution indicates that Plaintiff was guilty of the charges." (Id. at 8.)

In response, Plaintiff has asserted that the North Carolina Supreme Court (i) discerned a constitutional violation in Plaintiff's criminal case that led to his conviction of the Assault

17

Charges and (ii) "reversed" his conviction of the same. (See Docket Entry 61 at 5.) According to Plaintiff, he received no sentence or fine for the Assault Charges (see id. at 6), the issues remanded by the North Carolina Supreme Court bear no relationship with the allegations of the Operative Complaint (see id. at 6-7), and "[t]here is no record of [] Plaintiff pleading guilty for an exchange of dismissal" (id. at 7; see also id. (disputing notion that compromise resolution indicates Plaintiff's guilt)).

The Court should reject Defendants' arguments. Critically, the parties appear to agree that (A) this action challenges the constitutionality of the questioning, arrest, prosecution, and conviction of Plaintiff on the Assault Charges (see Docket Entry 59 at 1-4; Docket Entry 61 at 6), and (B) the Forsyth County District Attorney's Office subsequently dismissed the Assault Charges (see Docket Entry 59-1 at 2), such that Plaintiff possesses no valid, outstanding conviction of the same.[4] Under those circumstances,

_____

4 Notwithstanding Plaintiff's contrary suggestions (see Docket Entry 61 at 5), the North Carolina Supreme Court neither (conclusively) found a constitutional violation in Plaintiff's criminal case nor (explicitly) vacated Plaintiff's conviction on the Assault Charges, see McAllister, 375 N.C. at 477, 847 S.E.2d at 725. Neither the pleadings nor the Motion shed any light on what occurred between the remand with instructions by the North Carolina Supreme Court and the subsequent dismissal of the Assault Charges by the Forsyth County District Attorney's Office. (See Docket Entries 18, 39, 45, 49, 58.) However, the Dismissal Form's reference to "further prosecution [on the Assault Charges]" (Docket Entry 59-1 at 2) strongly suggests that, as of October 2021, Plaintiff's conviction for the Assault Charges no longer remained valid.

18

the Court should conclude "that th[is ] action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against [ P]laintiff," <u>Heck</u>, 512 U.S. at 487.

To resist that conclusion, Defendants have focused on Plaintiff's guilty plea in the 2020 Case, arguing that the circumstances of that involuntary-manslaughter conviction preclude Plaintiff from establishing favorable termination of the Assault Charges for purposes of <u>Heck</u>, such that this action may not proceed. (<u>See</u> Docket Entry 59 at 7–8.) However, the pleadings do not indicate that, via this action, Plaintiff seeks to demonstrate the invalidity of his involuntary-manslaughter conviction (or the sentence he received for that offense). (<u>See</u> Docket Entry 18.) Whether Defendants violated Plaintiff's constitutional rights in connection with the Assault Charges bears no apparent elemental connection to the validity of his involuntary-manslaughter conviction.

According to Defendants, the fact that Plaintiff pleaded guilty in the 2020 Case in exchange for the dismissal of the Assault Charges supplies the necessary connection, because that negotiated resolution casts doubt on Plaintiff's innocence of the Assault Charges. (<u>See</u> Docket Entry 59 at 8.) However, Defendants have improperly imported favorable termination, an element of a so-called Section 1983 malicious-prosecution claim, into the <u>Heck</u> analysis, which requires a nominally identical but conceptually

19

distinct inquiry.[5]  In effect, Defendants have argued that "*Heck* bars a [Section] 1983 suit unless the plaintiff could succeed in a malicious-prosecution action," <u>Roberts</u>, 947 F.3d at 1202-03.

Courts have not interpreted <u>Heck</u> in that manner.  For example, the United States Court of Appeals for the Tenth Circuit rejected the theory that <u>Heck</u> bars an action "challeng[ing] . . . the constitutionality of [the defendant officer's] conduct during [the plaintiff's] arrest for . . . charges that were dismissed." <u>Butler v. Compton</u>, 482 F.3d 1277, 1280 (10th Cir. 2007) (characterizing such rejected theory as "[e]xpansion of *Heck*" and noting that "a [Section] 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating").  In reaching that result, the Tenth Circuit explicitly disagreed with the notion that "[the plaintiff's Section] 1983 action would necessarily call into question the validity of his other unrelated . . . conviction [merely] because it was a part of the <u>same plea agreement</u> as the

_____

5 To the extent Defendants have grounded their request for a <u>Heck</u>-based dismissal in Plaintiff's supposed lack of innocence of the Assault Charges,

> *Heck*'s analogy to malicious prosecution did not result in the Supreme Court's adoption of a termination-indicative-of-innocence requirement for all [S]ection 1983 claims premised on an underlying conviction.  Rather, to guard against parallel litigation and promote finality and consistency, the Court adopted an <u>accrual rule</u> designed to avoid inconsistent results and new avenues of collateral attack.

<u>Smalls v. Collins</u>, 10 F.4th 117, 137 (2d Cir. 2021) (emphasis added).

related . . . charges that were dismissed." Id. at 1280 (emphasis added).

The United States Court of Appeals for the Eleventh Circuit reached a similar result under analogous circumstances, explaining that "Heck is intended to 'foreclose collateral attacks,'" Henley v. Payne, 945 F.3d 1320, 1327 (11th Cir. 2019) (internal brackets omitted) (quoting McClish v. Nugent, 483 F.3d 1231, 1250 (11th Cir. 2007)), and noting that "there is nothing to collaterally attack [when] the charge that forms the basis for [the plaintiff's Section] 1983 claim was dismissed," id. The Eleventh Circuit adopted that interpretation of Heck despite the fact that the charge underlying the plaintiff's Section 1983 claim "was dropped . . . when he pled guilty to wholly unrelated offenses." Id. According to the Henley Court, the Heck accrual rule posed no bar because "[the plaintiff's Section] 1983 suit challenging his trespassing arrest does not share a common element with his state convictions for harassing phone calls and marijuana possession, which stem from wholly distinct incidents." Id. at 1327–28 (internal quotation marks omitted).

The cases cited by Defendants do not aid their cause. First, Defendants have relied in part on authority analyzing not whether the Heck accrual rule bars a Section 1983 action but whether a plaintiff has satisfied the favorable-termination element of a malicious-prosecution claim. (See Docket Entry 59 at 9 (citing

21

Elkins v. Broome, 328 F. Supp. 2d 596, 599 (M.D.N.C. 2004)).) For example, the Elkins Court considered whether the plaintiff (who had pleaded not guilty, gone to trial, and received "a prayer for judgment continued on the payment of court costs," Elkins, 328 F. Supp. 2d at 598 (noting that judge had found the plaintiff guilty but never entered judgment), had "fail[ed] to meet an essential element of his [fourth-amendment claim for unlawful seizure pursuant to legal process]," id. at 599. The Elkins Court ruled against the plaintiff (at summary judgment) because the disposition of his criminal charges did not indicate his innocence of those charges, see id., citing Heck only in the context of an unaddressed argument (i.e., "whether a [prayer for judgment continued] constitutes a conviction under North Carolina law," id. at 600 n.2).[6]

Moreover, Defendants have glossed over distinctions between this action and some authority upon which they have relied. (See

_____

6 Defendants also have seized on excerpts that blend the favorable-termination element of a malicious-prosecution claim with the Heck accrual rule (see, e.g., Docket Entry 59 at 8-9 (quoting North Carolina ex. rel. Bishop v. County of Macon, 809 F. Supp. 2d 438, 446 (W.D.N.C. 2011), aff'd in relevant part, 484 F. App'x 753 (4th Cir. 2012))). Compare Bishop, 809 F. Supp. 2d at 446 (citing Taylor v. Gregg, 36 F.3d 453, 455-56 (5th Cir. 1994), for proposition that "[w]hen a criminal matter is resolved by a compromise agreement of a guilty plea to some counts with the dismissal of others, this does not constitute a favorable termination with regard to the dismissed counts for the purposes of analysis under Heck"), with Taylor, 36 F.3d at 455-56 (analyzing favorable-termination element of malicious-prosecution claim without any reference to Heck).

22

Docket Entry 59 at 8–9 (citing <u>North Carolina ex. rel. Bishop v.</u> <u>County of Macon</u>, 809 F. Supp. 2d 438, 446 (W.D.N.C. 2011), <u>aff'd in</u> <u>relevant part</u>, 484 F. App'x 753 (4th Cir. 2012)).) For example, the plaintiffs in <u>Bishop</u> asserted Section 1983 claims for unreasonable search and seizure as well as excessive force, which constitutional violations allegedly occurred in connection with a criminal prosecution of one of the plaintiffs, John Bishop. <u>See</u> <u>Bishop</u>, 809 F. Supp. 2d at 443 (explaining that indictments charged John with felony breaking and entering, felony larceny, and felony possession of stolen property). John ultimately agreed to "enter[] an <u>Alford</u> plea to two of the eight indictments against him," <u>id.</u>, in exchange for dismissal of all other charges, <u>see id.</u> at 444.[7] Notably, the <u>Bishop</u> Court ultimately applied the <u>Heck</u> bar based on its conclusion that "[a]ny civil judgment holding that the property belonged to the [p]laintiffs would refute the accusation that John [had] stole[n] the property and possessed it unlawfully, and thus would undermine [his] conviction that was entered pursuant to the negotiated plea." <u>Id.</u> at 446.

When the <u>Bishop</u> plaintiffs appealed that ruling, the United States Court of Appeals for the Fourth Circuit rejected the

_____

7 The <u>Bishop</u> Court noted "the record [wa]s not entirely clear as to which [charges John had pleaded guilty]," <u>id.</u> at 446, but deemed that lack of clarity "of no consequence," <u>id.</u> <u>See id.</u> (collecting cases and concluding that John's plea to some of the charges precluded him from establishing "favorable termination as to the legal proceedings . . . concerning whether he stole the property in question").

23

argument that "success on [John's] claim for deprivation of property would not necessarily imply the invalidity of his convictions." <u>Bishop</u>, 484 F. App'x at 755. More specifically, the Fourth Circuit discerned a <u>Heck</u> problem because "the convictions [for attempted breaking and entering] cannot stand without evidence that John was in possession of the stolen items . . . because his possession was the only evidence that [he had] committed any offense." <u>Id.</u> at 756. The Fourth Circuit therefore "affirm[ed] the . . . holding that <u>Heck</u> barred John's claims," <u>id.</u>, without endorsing the broader principle (expressed by the lower court and advanced by Defendants here) that <u>Heck</u> precludes a Section 1983 action whenever the events challenged therein occurred in connection with a criminal charge dismissed pursuant to a compromise agreement (by which the Section 1983 plaintiff pleaded guilty to some other charge), <u>see id.</u> at 754–56. Instead, the <u>Heck</u> bar hinges on the relationship between the charges of conviction and the scope of the Section 1983 action. <u>See id.</u> at 756.

Insofar as Defendants have relied on out-of-circuit and/or unpublished authority (<u>see</u> Docket Entry 59 at 10–11 (citing <u>Gilles v. Davis</u>, 427 F.3d 197, 210–12 (3d Cir. 2005), <u>Fritz v. Akosomitas</u>, Civ. Action No. 2:13-3532, 2015 WL 1346311, at *6 (D.S.C. Mar. 23, 2015) (unpublished) (district judge adopting magistrate judge's recommendation), <u>aff'd</u>, 610 F. App'x 268 (4th Cir. 2015), and <u>Jones v. Union Cnty. Prosecutor's Office</u>, Civ. Action No. 13-59, 2013 WL

24

2352699, at *4 (D.N.J. May 29, 2013) (unpublished); Docket Entry 63 at 3 (citing Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009)); Docket Entry 68 at 1 (citing Daulatzai, 2022 WL 2078284, at *15)), those opinions provide inadequate support for the Motion.

Beginning with out-of-circuit authority, the Gilles Court concluded that Heck bars a Section 1983 suit attacking charges dismissed pursuant to a pretrial diversion program. See Gilles, 427 F.3d at 210-11. As grounds for that ruling, the Gilles Court relied on three non-precedential decisions, two that pre-dated Heck and one that included no discussion of Heck. See id. at 210-12 (citing Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992), Singleton v. City of New York, 632 F.2d 185, 193-95 (2d Cir. 1980), and Taylor, 36 F.3d at 455-56). The analysis by the Gilles Court reveals that the opinions upon which it relied considered matters other than the finality and consistency concerns motivating the Heck accrual rule. See id. at 210-11 (discussing Roesch, which reasoned that state prosecutors and courts would forfeit resource-conservation benefit of pretrial probationary programs if participants could maintain post-dismissal constitutional claims); id. at 211 (explaining that Singleton barred Section 1983 claim after "adjournment in contemplation of dismissal" because such disposition "l[eft] open the question of guilt"); id. (noting that Taylor adopted reasoning from Singleton). Instead of attempting to square the bases for those decisions with the bases for the Heck

25

accrual rule, Defendants have maintained, without elaboration, that Heck bars a Section 1983 claim by a plaintiff who received a "compromise resolution of his criminal charges" (Docket Entry 59 at 10). (See id.)[8]

As concerns the other Third Circuit case that Defendants cited in the Reply (see Docket Entry 63 at 3), the Kossler Court explicitly declined "to apply *Heck*'s test," Kossler, 564 F.3d at 190 n.6. Even ignoring that circumstance, the Supreme Court, via the Thompson decision (issued in April 2022, after Defendants filed the Reply (see Docket Entry 63 at 5 (dated Dec. 21, 2021))) has rejected the approach in Kossler. See Thompson, __ U.S. at __, 142 S. Ct. at 1336 (citing Kossler as one authority in pertinent circuit split).

Turning to the unpublished authority, the Daulatzai Court cited Heck only for the proposition that favorable termination constitutes an element of malicious prosecution, see Daulatzai, 2022 WL 2078284, at *15, which squares with the balance of the discussion interpreting the favorable-termination element of a malicious-prosecution claim (under Section 1983 and Maryland law),

---

8 At least one court in this circuit has refused to deem "a dismissal of charges even remotely analogous to a conviction," Tomashek v. Raleigh Cnty. Emergency Operating Ctr., 344 F. Supp. 3d 869, 875 (S.D.W. Va. 2018), criticizing opinions that "erroneously disregarded *Heck*'s literal language," id. See id. at 874 (collecting conflicting authority, including Gilles, on whether disposition via pretrial diversion program constitutes conviction for purposes of Heck).

see id.  In similar fashion, the Jones Court discussed the favorable-termination element, as opposed to the Heck accrual rule (despite its parenthetical reference to Heck).  See Jones, 2013 WL 2352699, at *4 (referencing Heck in connection with citation to Pittman v. Metuchen Police Dep't, 441 F. App'x 826, 829 (3d Cir. 2011)).  Like the Kossler Court, the Pittman Court deemed the Heck analysis unnecessary to its holding "because the malicious[-]prosecution claim fail[ed] on its own terms."  Pittman, 441 F. App'x at 829 (citing Kossler, 564 F.3d at 190 n.6).  Finally, although the Fritz recommendation discussed the Heck accrual rule, other circumstances warranted dismissal.  See Fritz, 2015 WL 1346311, at *6 ("[E]ven if Heck was not a bar to the prosecution of this action, it would still be subject to dismissal.").  The Fourth Circuit subsequently affirmed by unpublished per curium opinion, documenting only the absence of reversible error.  See Fritz, 610 F. App'x at 268.

     To the extent Defendants have invoked the Fritz recommendation for the proposition that Section 1983 plaintiffs face the Heck bar unless they can demonstrate that the criminal proceedings against them terminated in a manner indicative of their innocence (see Docket Entry 59 at 10), the Court should note the incongruity between the Fritz analysis and a core principle underlying the Heck accrual rule (i.e., the prevention of improper collateral attacks on convictions and sentences).  See Fritz, 2015 WL 1346311, at *5

("[E]ven where there has been no conviction on criminal charges, before a Section 1983 damages claim can be pursued[,] a [p]laintiff must nevertheless show that the charges against him were dismissed in a manner consistent with innocence." (emphasis added)).[9] A lone citation to non-precedential authority supported the supposed connection between <u>Heck</u> and the indication-of-innocence requirement. <u>See</u> <u>id.</u> (citing <u>Washington v. Summerville</u>, 127 F.3d 552, 557 (7th Cir. 1997)). However, the cited portion of <u>Washington</u> analyzes only the favorable-termination <u>element</u> of an Illinois malicious-prosecution claim, concluding that "[t]he abandonment of [criminal] proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or compromise with the accused; misconduct on the part of the accused in order to prevent trial; or the impossibility or impracticability of having the accused tried." <u>Washington</u>, 127 F.3d at 557; <u>see also</u> <u>id.</u> at 555–56 (discussing <u>Heck</u> only as it relates to timing of accrual and scope of <u>Heck</u> bar). In other words, neither <u>Fritz</u> nor <u>Washington</u> establishes that <u>Heck</u> imposes an innocence requirement.

---

9 If interpreted as a flawed identification of what <u>Heck</u> demands (as opposed to an acknowledgment of the favorable-termination element of a malicious-prosecution claim), the foregoing statement would "conflate[] <u>Heck's</u> favorable[-]termination requirement with the 'antecedent' question of 'whether <u>Heck</u> applies at all.'" <u>Henley</u>, 945 F.3d at 1327 (quoting <u>McClish</u>, 483 F.3d at 1251).

At bottom, the pleadings (as supplemented by materials subject to judicial notice) do not reveal that Plaintiff possesses a "criminal conviction that th[is] cause of action would impugn," Wallace v. Kato, 549 U.S. 384, 393 (2007). Accordingly, the Court should deny the Motion without prejudice to Defendants' right to renew their arguments about Plaintiff's inability to demonstrate favorable termination.[10]

## CONCLUSION

The Court should not view Heck as a bar to Plaintiff's claims because the Operative Complaint challenges the initiation and prosecution of the Assault Charges, which the Forsyth County District Attorney's Office dismissed, such that Plaintiff possesses no outstanding criminal conviction at odds with a successful judgment in this matter.

---

10 As implicitly acknowledged by Defendants (see Docket Entry 67), to satisfy the favorable-termination element of a Section 1983 claim under the Fourth Amendment, "a plaintiff need only show that the criminal prosecution ended without a conviction." Thompson, __ U.S. at __, 142 S. Ct. at 1341. That decision invalidated the approach of the many courts that previously required Section 1983 plaintiffs asserting claims for malicious prosecution to "demonstrate that the [challenged] prosecution ended with some affirmative indication of [their] innocence," id. at __, 142 S. Ct. at 1335; see also Laskar v. Hurd, 972 F.3d 1278, 1285 (11th Cir. 2020) (collecting cases endorsing approach now abrogated by Thompson). In any event, the Court need not address, at this stage, the merits of Plaintiff's Section 1983 claims (including satisfaction of the favorable-termination element, as applicable).

29

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 58)

be **DENIED**.

                                        /s/ L. Patrick Auld
                                       **L. Patrick Auld**
                              **United States Magistrate Judge**

August 15, 2022